FILED

2016 Jul-29  PM 04:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD VIEUX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:12-cv-00017-MHH-HGD** |
| | ) | |
| **FEDERAL BUREAU OF** | ) | |
| **PRISONS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on various objections to two reports and recommendations regarding *pro se* plaintiff Richard Vieux's *Bivens* and Federal Tort Claims Act (FTCA) claims. Mr. Vieux's claims concern alleged deficiencies in the dental care that he received while he was incarcerated at Talladega Federal Correctional Institution. All of the defendants asked the Court to enter judgment in their favor on Mr. Vieux's claims. On May 21, 2015 Magistrate Judge Harwell Davis entered a report concerning defendants Holbrook, Alley, and Burrell's motion for summary judgment. (Doc. 53). In his May 21, 2015 report, Judge Davis recommended that the Court grant the defendants' motion and dismiss Mr. Vieux's *Bivens* claims with prejudice. (Doc. 53, p. 30). Defendant Holbrook filed

no objections; defendants Alley and Burrell filed objections; and Mr. Vieux filed objections. (Docs. 54, 55).

On July 28, 2015, Magistrate Judge Davis entered a second report regarding the United States' motion for summary judgment. (Doc. 59). In his report, Judge Davis recommended that the Court grant in part and deny in part the United States' motion regarding Mr. Vieux's FTCA claims. Mr. Vieux did not object to the July 28, 2015 report. (Doc. 60). The United States filed objections to the report. (Doc. 61).

This opinion resolves all of the objections to the reports.

## I.      Standard of Review

When a party objects to a report and recommendation regarding a motion for summary judgment, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(B)-(C). The Court reviews de novo legal conclusions in a report and reviews for clear error factual findings to which no objection is made. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993); *see also LoConte v. Dugger,* 847 F.2d 745, 749 (11th Cir. 1988); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006). A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When reviewing objections

that relate to motions for summary judgment, the Court views the evidence in the light most favorable to the non-movant.

## II.   Discussion

### A.   Objections to the May 21, 2015 Report

Defendants Alley and Burrell do not object to the magistrate judge's recommendation that the Court dismiss Mr. Vieux's *Bivens* individual capacity claims for monetary damages, but these defendants contend that the magistrate judge should not have addressed the official capacity *Bivens* claims for prospective injunctive relief because the Court previously dismissed those claims on the basis of sovereign immunity.  (Doc. 54, pp. 2, 4, 9).  These defendants argue that if the Court reaches the issue, the Court should find that *Bivens* does not create a cause of action against federal officials in their official capacities.  (Doc. 54, pp. 6-9).

In making their argument, the defendants do not distinguish between claims for monetary damages and claims for prospective injunctive relief.  Judge Davis clearly held that the former are not viable when a plaintiff asserts the claim against federal actors in their official capacities.  (Doc. 53, pp. 16-17).[1]  Judge Davis raises an interesting question regarding the viability of *Bivens* claims for prospective injunctive relief.  Citing the well-recognized *Ex parte Young* rule that permits a

---

[1] Judge Davis wrote:  "Indeed, a *Bivens* suit against each of these defendants in their official capacities is in essence a lawsuit against the federal government and its agencies, and it is well settled that a *Bivens* claim for damages does not lie against the United States or its agencies." (Doc. 53, pp. 16-17) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477-80, 484-86 (1994), and *Lewis v. Charlotte Corr. Inst. Emps.*, 589 Fed. Appx. 950, 952 (11th Cir. 2014)).

plaintiff to pursue an official capacity claim against a state official for prospective injunctive relief, Judge Davis considered whether Mr. Vieux may assert a *Bivens* claim based on his request for "an injunction or declaratory judgment . . . to force FCI Talladega Staff and/or FBOP to transport [him] to the O[utside] S[urgeon] to have him/her determine the proper diagnoses and course of action for the bone fragment left in [tooth] #17." (Doc. 10, p. 18; *see also* Doc. 53, p. 18).[2]

In his discussion of the issue, Judge Davis relied on opinions that involve §1983 claims against state actors, not federal actors. (Doc. 53, p. 17). Judge Davis's analysis is consistent with the principle that "courts generally apply § 1983 law to *Bivens* caes." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995); *see also Butz v. Economou*, 438 U.S. 478, 500-01 (1978) ("There is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the identical violation under § 1983. The constitutional injuries made actionable by § 1983 are of no greater magnitude than those for which federal officials may be responsible . . . Surely, *federal* officials should enjoy no greater zone of protection when they violate *federal* constitutional rules than do *state* officers.") (emphasis in *Butz*); *Antoine v. Byers & Anderson*, 508 U.S. 429, 433 n.5 (1993) (reiterating the principle expressed in *Butz*).

---

[2] An identical request for injunctive relief appears at Doc. 46, p. 15, ¶ 41.

The Court has located no binding authority that expressly applies *Ex parte Young* in the *Bivens* context, but the Eleventh Circuit Court of Appeals has implicitly recognized that a *Bivens* plaintiff may pursue a claim for prospective injunctive relief. *See Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000). In *Bolin*, the plaintiffs brought an action for declaratory and injunctive relief against a number of federal officials. *Id.* at 1236-37. The Eleventh Circuit held that certain defendants were entitled to absolute immunity and that the plaintiffs were unable to "show the absence of an adequate remedy at law for their claims and therefore [were] not entitled to the declaratory or injunctive relief sought in their complaint." *Id.* at 1243.

In like fashion, the *Butz* case began as an action for prospective injunctive relief, but the plaintiff eventually eliminated his request for injunctive relief and sought damages instead. The Supreme Court explained:

> While the administrative complaint was pending before the Judicial Officer, respondent filed this lawsuit in Federal District Court. Respondent sought initially to enjoin the progress of the administrative proceeding, but he was unsuccessful in that regard. On March 31, 1975, respondent filed a second amended complaint seeking damages. Named as defendants were the individuals who had served as Secretary and Assistant Secretary of Agriculture during the relevant events; the Judicial Officer and Chief Hearing Examiner; several officials in the Commodity Exchange Authority; the Agriculture Department attorney who had prosecuted the enforcement proceeding; and several of the auditors who had investigated respondent or were witnesses against respondent.

*Butz*, 438 U.S. at 481-82.   Quoting *Bivens*, the Supreme Court observed that, "'[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.'" *Id.* at 485 (quoting *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 395 (1971)).   The Court explained the reason for this general rule:

> the decision in *Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official . . . Injunctive or declaratory relief is useless to a person who has already been injured.

*Butz*, 438 U.S. at 504.   In *Butz*, the Supreme Court did not consider the potential plaintiff who seeks injunctive relief to put a stop to an alleged ongoing injury to a constitutionally protected interest; the Supreme Court was silent with respect to the propriety of the plaintiff's initial federal claim for prospective injunctive relief.

*Bivens* does not preclude a federal claim for prospective injunctive relief.   In *Bivens*, the Supreme Court was tasked with determining whether a plaintiff who sought a remedy for a federal constitutional violation could recover damages in a federal action.   The Supreme Court framed the broad issue this way:   "[t]he question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts." *Bivens*, 403 U.S. at 397.   The Supreme Court answered that

question in the affirmative. Because prospective injunctive relief is a "remedial mechanism normally available in the federal courts," it would seem that the Supreme Court would recognize a *Bivens* action against federal actors for prospective injunctive relief.

The implicit recognition of a *Bivens* claim for prospective injunctive relief in *Bolin* and the well-settled rule that "federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers" lends substantial support to Judge Davis's conclusion that Mr. Vieux should be able to assert a *Bivens* claim against defendants Burrell and Alley for prospective injunctive relief. The Court will leave for another day the question of whether such a claim should be asserted against a federal actor as an official capacity claim or as an individual capacity claim because Judge Davis properly found that Mr. Vieux failed to establish genuine, disputed issues of material fact as to whether he suffered from an objectively serious medical need with respect to tooth #17 and whether the defendants were deliberately indifferent to that need.[3] Therefore, the

---

[3] The *Bolin* decision does not indicate whether the plaintiffs sought injunctive relief against the federal defendants in the defendants' official or individual capacities. In an unpublished decision in a case in which the plaintiff sought damages, the Eleventh Circuit stated: "[t]he availability of a cause of action for monetary damages or injunctive relief against federal officials in their individual capacities for a violation of a federal constitutional right was established in *Bivens*." *Daniel v. United States Marshals Serv.*, 188 Fed. Appx. 954, 961 (11th Cir. 2006). In another unpublished opinion in which a prisoner asserted that he was seeking injunctive relief against ICE, a panel of the Eleventh Circuit affirmed the district court's dismissal without prejudice of the *pro se* plaintiff's *Bivens* claim because the plaintiff "did not sue any federal officials in their individual capacity." *Gonzalez-Corrales v. I.C.E.*, 522 Fed. Appx. 619, 623 (11th Cir. 2013). Through a series of amendments to his complaint, Mr. Vieux appears to pursue his claims for

Court will dismiss Mr. Vieux's *Bivens* claims against defendants Holbrook, Alley, and Burrell in their entirety.

**B.     Objections to the July 28, 2015 Report**

In the July 28, 2015 report, Judge Davis recommended that the Court grant the United States' motion for summary judgment with respect to Mr. Vieux's claim relating to his cavity in tooth #18 and deny the claim concerning the infected root fragment that remained after Dr. Burrell removed tooth #17.  The United States objects to the July 28, 2015 report on three separate grounds.  Procedurally, the United States argues that the report could be construed as erroneously permitting a plaintiff to assert a FTCA claim against a federal employee, rather than against the United States.  Substantively, the United States contends that the Judge Davis erred in finding that Mr. Vieux's FTCA claims are not barred by the statute of limitations and in finding that expert testimony is not required to establish the standard of care in this medical malpractice action.  For the reasons that follow, the Court overrules these objections.

---

injunctive relief against at least some of the defendants, including defendant Burrell, in their individual capacities.  (*See* Doc. 46, ¶¶ 7, 41, 42; *see also* Doc. 1, ¶¶ 14, 57; Doc. 10, ¶¶ 14, 57, 64).  The Court construes Mr. Vieux's *pro se* pleadings liberally.  *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed.") (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).

### 1. Mr. Vieux asserts his FTCA claim against the United States only.

The Court disagrees with the United States' procedural argument. As Judge Davis noted, the FTCA "provides a mechanism for individuals to recover damages from the United States. . . ." (Doc. 59, p. 21). Although Judge Davis observed that Mr. Vieux named Dr. Burrell as a defendant and that Dr. Burrell filed a special report, the record is clear that the United States has been substituted as a defendant with respect to Mr. Vieux's FTCA claims. (Doc. 48). The record also is clear that the United States, not Dr. Burrell, filed a special report regarding Mr. Vieux's FTCA claims. (Doc. 56). Federal employees are personally immune from claims under the FTCA, *see* 28 U.S.C. § 2679(b)(1), and Mr. Vieux asserts FTCA claims against the United States only.

### 2. The statute of limitations does not bar Mr. Vieux's medical malpractice claim.

The United States' statute of limitations argument begins with 28 U.S.C. § 2401(b). That statute provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). *See Phillips v. United States*, 260 F.3d 1316, 1317 (11th Cir. 2001) ("It is undisputed that under section 2401(b), a tort claim must be presented

9

to the appropriate federal agency within two years after the claim accrues."). Judge Davis recognized the two year statute of limitations but found that Mr. Vieux alleged a continuing injury, and therefore, Mr. Vieux's FTCA claim with respect to tooth #17 has not accrued because the tooth root fragment has not been removed, and Mr. Vieux's FTCA claim with respect to tooth #18 accrued on December 3, 2010, when the tooth was extracted.  (Doc. 59, pp. 13- 14).

Under the FTCA, the general rule is that a claim "accrues at the time of injury." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999) (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).  But the general accrual rule does not apply to medical malpractice claims like Mr. Vieux's claims.   For medical malpractice actions, the discovery rule and the continuing tort rule apply.[4]  Judge

---

[4] The discovery rule provides that medical malpractice claims "accrue when the plaintiff knows of both the injury and its cause." *Diaz*, 165 F.3d at 1339 (citing *Kubrick*, 444 U.S. at 122); *see also Price v. United States*, 775 F.2d 1491, 1493 (11th Cir. 1985) ("Thus, a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant.").  This rule applies even if the plaintiff does not yet know that "the acts inflicting the injury may constitute medical malpractice." *Kubrick*, 444 U.S. at 113.

The FTCA medical malpractice discovery rule "protect[s] plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control of the tortfeasor or are otherwise not evident." *Diaz*, 165 F.3d at 1339.  Under this rule,

> the plaintiff need not know that []he has a legally cognizable claim for the claim to accrue, and may not bury h[is] head in the sand once []he is put on notice that the government may have caused an injury.  [H]e will not automatically lose h[is] claim, however, merely because the circumstances surrounding the injury make its existence or governmental cause not reasonably knowable.

*Id.*

Davis concluded that Mr. Vieux's medical malpractice claims regarding the root fragment from tooth #17 and the cavity in tooth # 18 are timely because of the continuing nature of Mr. Vieux's alleged injuries. (Doc. 59, pp. 13-14). The Court agrees.

"[A]n 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.'" *Baker v. Sanford*, 484 Fed. Appx. 291, 293 (11th Cir. 2012) (per curiam) (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980)).[5] "The critical distinction in the continuing violation analysis is whether the prisoner complains 'of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.'" *Id.* (quoting *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003)); *see also Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974) ("When a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases."), *vacated on other grounds*, 422 U.S. 563 (1975)).

The evidence viewed in the light most favorable to Mr. Vieux indicates that he repeatedly requested treatment for the root fragment at tooth #17 and the cavity

---

[5] *Lavellee* is binding authority. *See Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent in the Eleventh Circuit Court of Appeals decisions that the Fifth Circuit Court of Appeals rendered before October 1, 1981).

at tooth #18.   On August 18, 2009, Dr. Burrell extracted tooth #17.  (Doc. 46, ¶ 12).  Dr. Burrell removed a "small bone sliver" about one week later, but Mr. Vieux states that "this had nothing to do with the unknown tooth (root) left in #17."  (Doc. 46, ¶ 13).  Dr. Atwell, an outside oral surgeon, took x-rays of Mr. Vieux's mouth on September 15, 2009.   Afterwards, the oral surgeon recommended "a bone (root) fragment removal in #17 tooth."  (Doc. 46, ¶ 14). When he returned to the institution, Mr. Vieux "confronted" Dr. Burrell about the outside oral surgeon's recommendation.  Mr. Vieux contends that Dr. Burrell "got sassy and stated [Mr. Vieux] should have gotten Dr. Atwell to finish [his] dental problems.  [Mr. Vieux] snapped back that [Dr. Atwell] took her orders.  She then got sarcastic and stated that she would deal with [Mr. Vieux's] dental issues later." (Doc. 46, ¶ 14).

Sometime between September 2009 and March 2010, Mr. Vieux returned to Dr. Burrell and "indicated" that he "wanted whatever was in my mouth, #17, to be removed."  (Doc. 46, ¶ 15).  According to Mr. Vieux, Dr. Burrell "looked at her computer and informed [him] that she would have to break [his jaw] to remove what was there . . . ."  (Doc. 46, ¶ 15).  In December 2010, Mr. Vieux asked a dental hygienist about the removal of the "tooth (root) left in #17."  (Doc. 46, ¶ 20).  Mr. Vieux states that Dr. Burrell told him that "she would deal with [the root fragment] later or that she would have to break my jaw or flat out refused to

[remove] it."  (Doc. 46, ¶ 36).   Mr. Vieux asserts that he continues to feel "discomfort" and "constant irritation" in the area where Dr. Burrell extracted the tooth.  (Doc. 32, p. 8, ¶ 10; Doc. 44, p. 6).

With respect to tooth #18, Mr. Vieux states that Dr. Burrell carved out tooth #18 on August 18, 2009, the same day she extracted tooth #17.  Dr. Burrell told Mr. Vieux that "she would fill it in later because [Mr. Vieux] had, based upon X-rays she viewed, more dental issues" that needed attention.  (Doc. 46, ¶ 12).   Mr. Vieux explained that one week later when Dr. Burrell removed the bone sliver near tooth #17, "#18 still was not filled in by [Dr. Burrell]."  (Doc. 46, ¶ 13).   On September 15, 2009, oral surgeon Dr. Atwell recommended the "filling of the carved out #18."  (Doc. 46, ¶ 14).  Mr. Vieux asked Dr. Burrell about Dr. Atwell's recommendation.  According to Mr. Vieux, Dr. Burrell stated that "she would deal with [his] dental issues later."  (Doc. 46, ¶ 15).  Sometime between September 2009 and March 2010, Mr. Vieux saw Dr. Burrell again and told her that he wanted tooth #18 filled.  (Doc. 46, ¶ 15).  On March 23, 2010, Mr. Vieux "inquired about the filling of #18."  (Doc. 46, ¶ 16).  Dr. Burrell stated that she would not do the work "because it was too close to her lunch" and advised Mr. Vieux to come back when he was in more pain.  (Doc. 46, ¶ 16).

In April 2010, Mr. Vieux returned to Dr. Burrell "complaining about pain in [his] mouth and the need to . . . fill in #18."  (Doc. 46, ¶ 17).  Mr. Vieux alleges

that Dr. Burrell disregarded his request and stated that his discomfort was caused by gingiva.  (Doc. 46, ¶ 17).  On November 10, 2010, Mr. Vieux filed a written request for dental attention in which he explained "the situation of the carved out #18, that a piece of it broke off, pain [he] was having, and the extreme need for filling."  (Doc. 46, ¶ 18).  On November 20, 2010, a dental hygienist informed Mr. Vieux that he was placed on routine care.  (Doc. 46, ¶ 18).

On November 24, 2010, Mr. Burrell saw a physician's assistant.  (Doc. 46, ¶ 19).  The physician's assistant "determined that [Mr. Burrell] had an infection and #18 tooth was rotted."  (Doc. 46, ¶ 19).  On December 1, 2010, a dental hygienist concluded that the "#18 [tooth] was indeed rotted and extraction was the only option immediately."  (Doc. 46, ¶ 20).  On December 3, 2010, a temporary dentist extracted tooth #18 fourteen months after Dr. Burrell carved out the tooth.  (Doc. 26-3, p. 6; Doc. 46, ¶ 21).

These facts viewed in the light most favorable to Mr. Vieux, demonstrate that Mr. Vieux's FTCA medical malpractice claims are based upon a continuous injury.  "When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period beings to run, at the time the unlawful conduct ceases."  *Robinson v. United States*, 327 Fed. Appx. 816, 818 (11th Cir. 2007).  Mr. Vieux's claim regarding the root fragment at tooth #17 has not accrued because the alleged unlawful conduct has not ceased; neither Dr. Burrell nor

14

another dentist has removed the root fragment.  Mr. Vieux's claim regarding tooth #18 accrued on December 3, 2010 when the temporary dentist extracted tooth #18. Therefore, Mr. Vieux timely filed an administrative claim on November 7, 2011, within the two year statute of limitations. *See Robinson*, 327 Fed. Appx. at 818-19 ("The facts, as alleged in the complaint, however, support an inference of continued disregard of Robinson's need of medical treatment for his hernia until October 3, 2003, when Robinson's hernia surgery was performed.  Because Robinson's claim regarding his hernia accrued on October 3, 2003, and Robinson filed his administrative claim on September 23, 2005, within the two years statute of limitations, his FTCA claim is timely as to the denial of adequate health care for his hernia.  Likewise, continuing to expose Robinson to the source of his scabies after he was diagnosed was a continuing violation of Robinson's rights. [Therefore], Robinson's claim is timely as to his continued exposure to scabies.").[6]

The Court is not persuaded by the United States' argument that the Court should not apply the continuing tort or continuing violation theory in the context of FTCA claims.  The United States argues that "*Robinson* is bad law" and is "the lone FTCA case in the Eleventh Circuit to hold that a medical malpractice cause of action does not accrue until an injury is remedied."  (Doc. 61, p. 22).  The United

---

[6] Because Mr. Vieux's FTCA claims involve a continuing injury, the Court need not address the United States' arguments concerning other equitable tolling doctrines.  (*See* Doc. 61, pp. 24-29).

States may ask the Eleventh Circuit to re-visit *Robinson*; this Court will follow and apply the *Robinson* decision.  Although *Robinson* is only persuasive authority, it is directly on point, and it is consistent with the statement quoted in *Baker* and found in *Lavellee* (which is binding authority) that "an 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.'"  *Baker*, *supra*.[7]

The United States' alternative argument challenging application of the continuing tort doctrine to FTCA claims fairs no better.  The United States provides no authority to support its assertion that the continuing violation doctrine "is generally not applicable in medical malpractice actions where the conduct is injurious rather than proscribed."  (Doc. 61, p. 24).  Because "courts generally apply § 1983 law to Bivens cases," *Abella*, *supra*, the Eleventh Circuit's reliance on cases that arose under § 1983 to support the continuing violation analysis is not unusual and does not undermine the Court's recognition of the doctrine in the context of an FTCA claim.  Indeed, the Eleventh Circuit's application of the continuing violation doctrine in an FTCA action is not unique among the circuit courts of appeals.  *See Hoery v. United States*, 324 F.3d 1220, 1222 (10th Cir. 2003) ("For continuing torts, however, the claim continues to accrue as long as

---

[7] *See Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.") (citing *United States v. Rodriquez-Lopez*, 363 F.3d 1134, 1138 n. 4 (11th Cir. 2004)).

tortious conduct continues, although the plaintiff's recovery is limited by the statute of limitations to the two-year period dating back from when the plaintiff's complaint was filed."); *Page v. United States*, 729 F.2d, 818, 821-22 (D.C. Cir. 1984) ("Since usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since one should not be allowed to acquire a right to continue the tortious conduct, it follows logically that statutes of limitation should not run prior to its cessation.") (internal quotation marks and citations omitted). Therefore, the Court overrules the United States' objection to Judge Davis's statute of limitations analysis.

### 3.   Mr. Vieux does not have to produce expert testimony to proceed with his claim regarding tooth #18.

The United States argues that Mr. Vieux cannot pursue his medical malpractice action without expert testimony. Judge Davis concluded that Mr. Vieux does not have to produce an expert opinion to proceed with his claim as to tooth #18. The Court agrees. Judge Davis found that Mr. Vieux must submit expert testimony with respect to his FTCA claim concerning toot #17. (Doc. 59, p. 25). Neither party objected to this portion of Judge Davis's report and recommendation. The Court finds no clear error in the factual findings on which the recommendation is based. Therefore, the Court will enter judgment in favor of

the United States on Mr. Burrell's FTCA claim related to tooth #17.  Mr. Burrell's

FTCA claim related to tooth #18 is a different matter.

When Dr. Burrell treated Mr. Vieux, he was housed at the Talladega Federal

Correctional Institution in Talladega, Alabama.  Therefore, Alabama law governs

Mr. Vieux's FTCA medical malpractice claim.  *See Rushing v. United States*, 288

Fed. Appx. 616, 620 (11th Cir. 2008) ("Liability under the FTCA for 'personal

injury caused by the negligent or wrongful act or omission of any employee of the

Government,' should be determined 'in accordance with the law of the place where

the act or omission occurred.'") (quoting 28 U.S.C. § 1346(b)(1)).

Under the Alabama Medical Liability Act, "a dentist's duty to the patient

shall be to exercise such reasonable care, diligence, and skill as . . . dentists in the

same general neighborhood, and in the same general line of practice, ordinarily

have and exercise in a like case."  Ala Code § 6-5-484(a).  "To prevail on a

medical-malpractice claim, a plaintiff must prove 1) the appropriate standard of

care, 2) the doctor's deviation from that standard, and 3) a proximate causal

connection between the doctor's act or omission constituting the breach and the

injury sustained by the plaintiff."  *Breland ex rel. Breland v. Rich*, 69 So. 3d 803,

814 (Ala. 2011) (internal quotation marks and citations omitted).  Generally, "the

plaintiff is required to produce expert medical testimony to establish the applicable

standard of care and a breach of that standard of care, in order to satisfy the

plaintiff's burden of proof." *Anderson v. Ala. Reference Labs.*, 778 So. 2d 806, 811 (Ala. 2000). Alabama law recognizes an exception to the general rule "where want of skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common knowledge and experience to understand it." *Ex parte HealthSouth Corp.*, 851 So. 2d 33, 38 (Ala. 2002).

In *Anderson* , the Alabama Supreme Court provided four examples that fall under this exception:

> 1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.

*Anderson*, 778 So. 2d at 811.

In *Ex Parte HealthSouth*, the Alabama Supreme Court explained that "examples three and four have nothing to do with an exception for general matters within the common knowledge of a layperson." 851 So. 2d at 38. Therefore, the Alabama Supreme Court reformulated the exception, stating:

> to recognize first, a class of cases where want of skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common knowledge and experience to understand it, . . ., such as when a sponge is left in, where, for example, the wrong leg is operated on, or, as here, where a call for assistance is completely ignored for an unreasonable period of time. A second exception to the rule requiring expert testimony applies when a plaintiff relies on a

> recognized standard or authoritative medical text or treatise, . . . , or is
> himself or herself a qualified medical expert.

*Ex parte HealthSouth Corp.*, 851 So. 2d at 39.  Recognizing that the *Anderson* list is not exhaustive, the Alabama Supreme Court held that it "would [] offend common sense to require the [the plaintiffs] to use an expert to aid the jury in determining whether the nurses breached the standard of care by completely ignoring for 30 minutes to an hour a call for assistance by a patient who has just returned from the surgical ward following back surgery and who was under orders not to get out of bed."  *Id.* at 38; *see also Morgan v. Publix Super Markets, Inc.*, 138 So. 3d 982, 989 (Ala. 2013) ("[A] pharmacy's negligence in dispensing the wrong medication is so apparent that a layperson can understand it without the assistance of expert testimony."); *McGathey v. Brookwood Health Servs., Inc.*, 143 So. 3d 95, 103 (Ala. 2013) (holding that expert testimony not required for the plaintiff to avoid summary judgment where the plaintiff asserted that a hospital "employee violated the standard of care by failing to ensure that a hot medical device was sufficiently cool before it was attached to the patient's arm and hand").

Mr. Vieux's claim regarding tooth #18 falls within the class of cases in which the medical error, if proven, is so obvious that expert testimony is not necessary.  Viewing the record in the light most favorable to Mr. Vieux, Dr. Burrell carved a cavity out of his tooth in August 2009, and for fourteen months, she and other prison dental officials refused repeated requests from Mr. Vieux to

fill the cavity.  (Doc. 46, ¶¶ 12, 13, 14, 16, 17, 18, 19, 20).  On December 3, 2010, a dentist extracted tooth #18.  (Doc. 46, ¶ 21).  A dentist's failure to fill an open cavity in a tooth for fourteen months "is so is so apparent that a layperson can understand it without the assistance of expert testimony."  *See Morgan*, 138 So. 3d at 989.

Citing Mr. Vieux's dental records, the United States argues that Mr. Vieux did not complain about pain in tooth #18 from August 2009 until November 2010. (Doc. 61, p. 32; *see also* Doc. 29-1, pp. 236, 238; Doc. 29-2, p. 52).  Mr. Vieux's sworn allegations create a question of fact on this point.  According to Mr. Vieux, after an outside oral surgeon recommended the "filling of carved out #18" in September 2009, he asked Dr. Burrell about the recommendation. (Doc. 46, ¶¶ 14, 15).  Mr. Vieux asserts that Dr. Burrell stated that "she would deal with [his] dental issues later."  (Doc. 46, ¶ 15).  Sometime between September 2009 and March 2010, Mr. Vieux told Dr. Burrell that he wanted tooth #18 filled.  (Doc. 46, ¶ 15). On March 23, 2010, Mr. Vieux "inquired about the filling of #18."  (Doc. 46, ¶ 16).  On April 5, 2010, Mr. Vieux returned to Dr. Burrell "complaining about pain in [his] mouth and the need to . . . fill in #18."  (Doc. 46, ¶ 17).[8]

---

[8] The Court must "credit the 'specific facts' plead in [Mr. Vieux's] sworn complaint when considering his opposition to summary judgment."  *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).

The United States also relies on Dr. Burrell's declarations in which she explained that she did not extract or fill the cavity at tooth #18 in August 2009 because Mr. Vieux "did not identify that tooth as a problem." (Doc. 26-3, ¶ 8). Dr. Burell disputes Mr. Vieux's allegations that she refused to treat him for pain in tooth #18. (Doc. 26-3, ¶ 14). Based in part on these facts, Dr. Burrell states that "[i]t is her opinion that the dental care she provided for [Mr. Vieux] while he was housed at FCI Talladega met the standard of care and was in accordance with community standards." (Doc. 56-1, ¶ 5). Mr. Vieux's sworn statements contradict the factual assertions in Dr. Burrell's declarations. *See supra* pp. 13-14, 21. Therefore, a jury must resolve those factual disputes and determine whether Dr. Burrell breached the standard of care.

## III.  Conclusion

For the reasons stated above, the Court finds that there are no genuine issues of material fact as to Mr. Vieux's *Bivens* claims. The Court enters judgment as matter of law in favor of defendants Holbrook, Alley, and Burrell with respect to Mr. Vieux's *Bivens* claims.

The Court finds that there are no genuine issues of material fact as to Mr. Vieux's FTCA claim concerning Dr. Burrell's treatment of the #17 root fragment. The Court enters judgment as a matter of law in favor of the United States with respect to Mr.Vieux's FTCA claim regarding the root fragment in tooth #17.

The Court accepts Judge Davis's recommendation and finds that there are genuine issues of material fact as to Mr. Vieux's FTCA claim concerning Dr. Burrell's treatment of tooth #18.  Therefore, the Court denies the United States' motion for summary judgment on Mr. Vieux's FTCA claim concerning tooth #18.

The Court will set a trial date for Mr. Vieux's remaining FTCA claim. Although Mr. Vieux's complaint requests "[a] jury trial on all issues triable by jury" (Doc. 46, p. 15), Mr. Vieux does not have a right to a jury trial on his remaining FTCA claim against the United States.  "With the exception of [28 U.S.C.] § 1346(a)(1), a tax provision, 'any action against the United States under section 1346 shall be tried by the court without a jury.'"  *Daniel*, 188 Fed. Appx. at 957-58 (quoting 28 U.S.C. § 2402)); *see also Carlson v. Green*, 446 U.S. 14, 22 (1980) ("[A] plaintiff cannot opt for a jury in an FTCA action.").  Therefore, the Court **SETS** a bench trial for **9:00 a.m.** on **August 29, 2016** in Courtroom 7B, 1729 Hugo L. Black United States Courthouse.  The Court will provide the parties with pretrial instructions by separate order.

**DONE** and **ORDERED** this July 29, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE